IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RONNIE KEETON, | : | Case No. 3:12-cv-230 |
| Plaintiff, | : | District Judge Walter H. Rice<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN AWARD OF DIB BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 10), Plaintiff's Reply (doc. 11), the administrative record (doc. 6),[2] and the record as a whole.

## I. BACKGROUND

**A.**

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

Plaintiff applied for DIB on December 21, 2007, alleging a disability onset date of April 11, 2006. PageID 60, 156-58. Plaintiff claims he is disabled due to post-traumatic stress disorder ("PTSD"), diabetes, and a heart condition. *See* PageID 178.

Following initial denials of his application, an administrative hearing was conducted before ALJ Amelia Lombardo on March 12, 2010. PageID 81-111. On July 28, 2010, the ALJ issued a written decision, concluding that Plaintiff was not disabled. PageID 60-73. Specifically, the ALJ's "Findings" were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009;

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 11, 2006 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: residual effects of a myocardial infarction with stenting in 2000; post-traumatic stress disorder ("PTSD"); and depression (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following additional limitations: unskilled, low stress work; no assembly line production quotas; and not fast paced;[3]

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

-2-

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on March 8, 1948 and was 61 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)); and

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 11, 2006, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g))

PageID 63-73 (footnote added). Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 45-47. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then timely filed this appeal on July 12, 2012. Doc. 1.

**B.**

At the administrative hearing, Plaintiff testified that he had a heart attack around 2000, and had a stent put into his heart. PageID 88. He further testified that he has diabetes, but controls it with his diet. PageID 88-89.

During the hearing, Plaintiff testified regarding his PTSD resulting from his service as a medical technician in the Vietnam War. Though he was able to work for over 30 years after

returning from the War, his PTSD has worsened in the past two decades. *See* PageID 89-90. He believes his PTSD symptoms have exacerbated due, in part, to the United States' increased military activity since the Gulf War. *Id.* Additionally, Plaintiff believes the stress of being the primary caregiver for his father, who had Alzheimer's disease, triggered an increase in his PTSD symptoms because, while caring for his father, he felt similar feelings of helplessness as he did when treating wounded soldiers during the War. *See* PageID 98-101.

Plaintiff has nightmares about explosions, and he often awakes feeling like he has been to war. PageID 90. Although he takes Trazodone to help him sleep, he nonetheless wakes up three to four times per night. PageID 91. He also takes medication (Citalopram) for his nerves. *Id.* He has difficulty focusing, and his medications make him feel like he is "in a fog." PageID 90, 102. Moreover, Plaintiff testified that he has trouble communicating effectively -- *e.g.*, he has to search for words when speaking. PageID 95. Plaintiff also has panic attacks three to four times per week, as well as auditory and visual hallucinations a few times per week.[4] PageID 102-03. Plaintiff has been treated at the Department of Veterans Affairs ("VA") Medical Center. *See* PageID 245-354, 556-97.

When Plaintiff was employed, he had a violent outburst or altercation at work every six months, and toward the end of his employment, he missed work a couple of times per week due to stress. PageID 96-98. Plaintiff decided to retire early in 2004 due to his PTSD symptoms. PageID 89-90. In January 2007, the VA determined that Plaintiff is unable to work due to his service-connected disabilities, and has been since April 11, 2006. PageID 548-55. The VA, accordingly, granted him "individual unemployability" benefits. *Id.*

## C.

---

[4] For example, Plaintiff hears an unfamiliar voice telling him to "come over here," but when he turns around, no one is there. PageID 103. Additionally, Plaintiff sees camouflaged soldiers standing in trees. PageID 104.

Mark Pinti, a vocational expert ("VE"), testified at the hearing. PageID 106-10. The VE opined that Plaintiff cannot perform any of his past relevant work. PageID 106-07. However, the VE testified that a hypothetical individual -- with Plaintiff's vocational profile and the RFC described in Finding No. 5 above -- could perform 40,000 jobs in the regional economy. PageID 107-08. On cross examination, the VE acknowledged that an individual who is unable to concentrate 15% of the day is unemployable. PageID 109.

## II. APPLICABLE LAW

### A.

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which [he or she] can act, without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will

not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.**

To be eligible for DIB benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

On appeal, Plaintiff challenges: (1) the weight accorded to the medical opinions concerning his mental impairments; (2) the ALJ's credibility determination; and (3) the ALJ's assessment of his physical impairments. Doc. 8 at PageID 656-64. Essentially, Plaintiff argues the ALJ erred at Step Five of the sequential evaluation recited above -- *i.e.*, finding there is work available in the national economy which he can perform. *See id.* At the Fifth Step, the Commissioner has the burden of showing the claimant has "the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). The Commissioner's Step Five determination must be supported by substantial evidence. *Id.* "This kind of substantial evidence may be produced through reliance on the testimony of a [VE] in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* (internal quotations and alternations omitted).

Here, the ALJ's Step Five determination is not supported by substantial evidence. As explained below, the ALJ incorrectly weighed the medical opinions in formulating Plaintiff's RFC, and the hypothetical question posed to the VE, therefore, did not accurately portray Plaintiff's mental impairments.

### A.

The Court finds the ALJ improperly deferred to the opinion of a non-examining, state consulting psychologist over the well-supported opinion of an examining psychologist in determining Plaintiff's RFC. The ALJ must abide by certain standards in weighing medical opinions. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). One such standard is that an opinion from an examining medical source is presumptively entitled to more weight than an opinion from a non-examining one. *See id.*; 20 C.F.R. § 404.1527(c)(1). Further,

the ALJ must consider certain factors when evaluating a medical opinion: whether the opinion has evidentiary support and is consistent with the record as a whole; the source's specialization; and any other relevant factors. 20 C.F.R. § 404.1527(c).

In this case, there are two relevant medical opinions concerning Plaintiff's PTSD and his ability to work. One is the November 2006 opinion of Emanuel Papadakis, Psy.D., a clinical psychologist at the VA Medical Center. PageID 286-88. Dr. Papadakis determined that, based on his examination of Plaintiff and review of his VA medical records, Plaintiff is "not able to obtain and maintain gainful employment on a full time basis." PageID 287. He noted that "[d]espite intensive psychiatric treatment and individual psychotherapy[,] [Plaintiff] continues to have persistent [PTSD] symptoms that appear to not be getting better, but instead to be worsening." PageID 286. Dr. Papadakis further reported that Plaintiff is agitated, hypervigilant, suspicious and tearful; has nightmares and flashbacks; isolates himself at home and avoids other people; and has difficulty with concentration, attention, and short term memory. PageID 287. The ALJ gave "little, if any, weight" to Dr. Papadakis's disability finding, claiming the opinion was "unsupported by other evidence, especially the treatment records from the claimant's therapist." PageID 68. According to the ALJ, "[t]he only plausible explanation for [Dr. Papadakis's] pessimistic assessment of the claimant's functional capabilities is that such assessment was based on an unquestioning acceptance of [the] claimant's subjective complaints." *Id.*

The second opinion is from Katherine Lewis, Psy.D., a state agency psychologist who never examined Plaintiff. *See* PageID 359-75. Dr. Lewis reported that Plaintiff was only moderately limited in work-related mental abilities, and was not disabled. *See id.* The ALJ gave Dr. Lewis's opinion "great weight," claiming it was "a credible estimation of the claimant's

work-related mental capacity and is not inconsistent with the evidence of record or the [RFC] found herein." PageID 69.

### B.

The ALJ inappropriately afforded more weight to Dr. Lewis's opinion than Dr. Papadakis's opinion. Not only was the opinion of Dr. Papadakis, as an examining source, entitled to more weight, *see* 20 C.F.R. § 404.1527(c)(1), but the VA medical records overwhelmingly support Dr. Papadakis's disability finding. Plaintiff has consistently received Global Assessment of Functioning ("GAF") scores in the range of 45-52.[5] PageID 274 (GAF of 50), 287 (46), 300 (52), 306 (48), 319 (45), 556 (50), 561 (50). A GAF score between 41 and 50 indicates "[s]erious symptoms" and a "serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000). Moreover, the examination notes of two VA psychiatrists -- Darshan Sehbi, M.D. and Richard Sanders, M.D. -- support Dr. Papadakis's disability finding, *see, e.g.*, PageID 296-97, 300-01, 305-06, 317-20, as do the treatment notes of Raymond Hugger, M.S.W., a social worker at the VA Medical Center who specializes in PTSD therapy.[6] *See, e.g.*, PageID 282-83 296, 298-306, 312, 316-17, 323-24, 330-31, 334-38, 558-60, 563-66, 581-83. Further, the records repeatedly document Plaintiff's auditory and visual hallucinations, *see, e.g.*, PageID 274, 296, 300, 305, 561; anger and agitation, *see, e.g.*, PageID 287, 296, 318, 331, 336; depression, *see, e.g.*, PageID 283, 297, 305-06, 319, 329, 336; and his dreams and flashbacks of the Vietnam War, *see e.g.*, PageID 296, 305, 319, 323, 332, 335, 337-38, 556, 561, 576.

---

[5] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F. App'x 191, 194 n.2 (6th Cir. 2003).

[6] Although Mr. Hugger, as a social worker, does not qualify as an "acceptable medical source" under Social Security regulations, *see* 20 C.F.R. §§ 404.1502, 404.1513(a), the ALJ must nonetheless consider his treatment records. *See Gayheart*, 710 F.3d at 378-79.

C.

For similar reasons, the ALJ's rejection of the VA's disability determination is unsupported by substantial evidence. *See* PageID 71. Relying in part on Dr. Papadakis's opinion, the VA determined that Plaintiff is unable to work due to his service-connected disabilities, and has been disabled since April 11, 2006. *See* PageID 548-55. The VA deems Plaintiff's disabilities "permanent in nature." PageID 554. The ALJ improperly found the VA's decision was not supported by the "great weight of the evidence." PageID 71; *accord Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 809-10 (S.D. Ohio 2009) (Ovington, M.J.; Rose, J.) (noting the ALJ must consider the disability determination of the VA and provide good reasons for disagreeing with such a determination). Contrary to the ALJ's statement, and as recited above, the VA medical records overwhelmingly support the debilitating effects of Plaintiff's PTSD. Indeed, the only evidence that conflicts with the VA disability finding is the opinion of a non-examining source, Dr. Lewis. That sole opinion does not amount to substantial evidence justifying the ALJ's rejection of the VA's well-supported disability determination. *Cf. Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 713-14 (S.D. Ohio 2012) (Newman, M.J.; Rice, J.) (finding that conflicting opinions of state consulting doctors do not justify the ALJ's rejection of a well-supported treating source opinion).

D.

Having found that the ALJ's non-disability determination is unsupported by substantial evidence, the Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991). The Court may remand for an award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely

involve the presentation of cumulative evidence. *See Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Such is the case here. As recounted herein, the proof of disability -- *i.e.*, the VA mental health records, and the numerous GAF scores reflective of serious symptomology -- is great, and remand will serve no purpose other than delay. *Accord Lowery*, 886 F. Supp. 2d at 713-14 (finding proof of disability was great, and remanding for an award of Social Security disability benefits); *Valentine v. Astrue*, 886 F. Supp. 2d 639, 655 (S.D. Ohio 2012) (Newman, M.J.; Rice, J.) (same).[7]

## IV.  RECOMMENDATION

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for an immediate award of DIB benefits, consistent with the Social Security Act, with an onset date of April 11, 2006; and

3. This case be **CLOSED**.

June 14, 2013                                                                 s/**Michael J. Newman**
                                                                              United States Magistrate Judge

---

[7] In light of this finding, it unnecessary to address Plaintiff's remaining alleged errors – that the ALJ erred in (1) assessing his credibility and (2) considering his physical impairments. *See* doc. 8 at PageID 656-64.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).